**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 08-083 (EGS) |
| | : | |
| v. | : | |
| | : | |
| JUAN PORTILLO, | : | |
| ALCIDES GUERRA-BAUTISTA, | : | |
| LENIN ERAZO, | : | Status date: August 13, 2008 |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Portillo's Motion to Suppress Evidence. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding this motion.

**I.      Factual Background**

On March 6, 2008, at approximately 7:10 p.m., an undercover detective from the Metropolitan Police Department (MPD) along with a confidential informant (CI), met with the defendants at the intersection of Riggs Road and Chillum Road, NE, Washington D.C. The CI had arranged to meet with the defendants to purchase two kilograms of cocaine. The three defendants were traveling in two separate vehicles, a pick-up truck and a Toyota Corrolla, and they followed the detective and CI, who were operating an undercover police van, to a parking lot in the rear of 5605 2nd Street, NE.

Once there, defendant Erazo got out of his vehicle and entered the front passenger seat of the undercover police van. Speaking Spanish, defendant Erazo instructed defendant Guerra-

Bautista to bring the drugs. Defendant Guerra-Bautista picked up a bag from the truck and handed it to Erazo. At that time, defendants Guerra-Bautista and Portillo entered the undercover police van and sat in the second row of seats.

Defendant Erazo handed the bag to the undercover detective who opened it and observed inside several smaller bags containing powder cocaine. Erazo commented on the high quality of the cocaine. Defendant Erazo handed the undercover detective a second bag of powder cocaine, and the CI gave Erazo a quantity of MPD currency to begin counting, while the undercover detective left the van and pretended to go retrieve the rest of the money to complete the transaction. With that, the arrest team converged on the van and arrested the three defendants. Once the defendants were removed from the van, officers recovered several rounds of .25 caliber ammunition inside of a napkin from the rear seat area of the van. A search incident to arrest of Defendant Portillo revealed that he had a .25 caliber pistol inside of his left boot. The white powder was sent to the Drug Enforcement Administration for analysis and was revealed to be approximately 1383 grams of cocaine hydrochloride.

**II.    The Officers Had Probable Cause to Arrest the Defendant.**

In the instant case, the undercover detective completed a drug transaction with the defendant and two companions. The defendant drove one of the two vehicles that followed the undercover police van to the 2nd Street address. The defendant entered the undercover van and was in a position to observe his companion in the front seat hand the bag of cocaine to the undercover detective. Moreover, the defendant could hear the entire conversation that took place inside of the van regarding the cocaine ("You can cook it. . . or blow it up your nose.") Based on

the scenario as it unfolded, the police deduced that each defendant had a role. Defendant Erazo was the point-man, as he set up the transaction with the CI over the telephone. However, Erazo revealed that he did not have a driver's license and therefore he needed assistance from someone to transport him to the transaction. Defendant Guerra-Bautista brought the cocaine from the truck to Erazo as he sat in the undercover police van. Defendant Portillo had a part as well, as the police learned after a search incident to arrest. He was the "muscle" and he came bearing a loaded firearm.

Defendant argues that the officers lacked probable cause to arrest him and search his person, and therefore the evidence seized from his person must be suppressed as the fruits of an illegal search and seizure. "Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense." United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted) . The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed. See Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with formal trials[;] [i]t is enough that there was a fair probability"). If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969).

In the instant case, defendant Portillo intentionally participated in a drug transaction with an undercover detective. At that moment, the police had probable cause to arrest him for distribution of a controlled substance. Once probable cause had been established, and the

3

detention effectuated, the officers were able to search his person in a search incident to arrest, and, accordingly, all items recovered were thus not the fruits of an illegal search or seizure.

Moreover, once the defendant was removed from the police van, officers recovered a napkin containing live rounds of .25 caliber ammunition from the rear seat area of the van. The presence of the ammunition, independent of the drug transaction, gave rise to probable cause to arrest and search the defendant who was seated in the rear area of the van. So long as probable cause for the arrest exists at the time of the search, it does not matter if the search is conducted just prior to the arrest. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search . . . we do not believe it particularly important that the search preceded the arrest rather than vice versa") (citing, inter alia, Bailey v. United States, 389 F.2d 305, 308 (1967) ("Even if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun")).

WHEREFORE, the Government respectfully requests that the Court deny the Defendant's motion.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

\_\_\_/S/_____
ERIC P. GALLUN, DC Bar #462025
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 4th Street, N.W.  #4122
Washington, DC 20530
(202) 514-6997
Frederic.Gallun@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 08-083 (EGS)** |
| | : | |
| v. | : | |
| | : | |
| **JUAN PORTILLO,** | : | |
| **ALCIDES GUERRA-BAUTISTA,** | : | |
| **LENIN ERAZO,** | : | Status date: August 13, 2008 |
| **Defendants.** | : | |

## ORDER

Defendant's Juan Portillo's Motion to Suppress Evidence order is hereby **DENIED**.

IT IS SO ORDERED.


Date:_____, 2008                    _____
                                              Emmet G. Sullivan
                                              United States District Court
                                              for the District of Columbia

5